IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 5:21-cv-00110-KDB-DSC

| | |
|---|---|
| SUMMIT MANAGEMENT SERVICES INC. AND RIVERWALK DENVER II LLC, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) **MEMORANDUM AND** |
| | ) **RECOMMENDATION** |
| FALLS LAKE FIRE & CASUALTY COMPANY AND COLONY INSURANCE COMPANY, | )<br>)<br>)<br>) |
| Defendants. | ) |

**THIS MATTER** is before the Court on Plaintiffs' Motion for Partial Judgment on the Pleadings (Document #18), Defendants' Motion for Judgment on the Pleadings (Document #21), and the parties' briefs.

The Motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and is now ripe for the Court's consideration.

## PROCEDURAL AND FACTUAL BACKGROUND

Accepting the factual allegations of the Complaint as true, Plaintiffs own and operate the Riverwalk Apartment Complex located in Denver, North Carolina. Doc. 1. Defendant insurance companies provided Plaintiffs with a policy that insured the property from March 31, 2020 until March 31, 2021. Doc. 1-2, Ex. B. On or about August 13, 2020, eight ground-level units sustained damage from water entering the building during a rain event. Doc. 1.

Plaintiffs retained the engineering firm ESP Associates to investigate the cause and origin of the water damage. *Id.* ESP Associates determined that backup or overflow from sewers or drains caused an overflow of stormwater, which entered the eight units and caused substantial damage.

1

*Id.* Plaintiffs filed a claim with Defendants stating that the damage was caused by sewer and drainage back up. *Id.* Defendants retained an independent adjuster through Engle Martin & Associates to assist with the claim. Defendants and Engle Martin thereafter hired the engineering firm EFI Global to inspect and advise on the cause of the back-up. EFI Global similarly determined that a backup of the storm sewer network piping led to an overflow of rainwater that caused the damage. *Id.*

Defendants denied Plaintiffs' insurance claim based upon the policy's exclusion of coverage for "floods." *Id.* After receiving the denial letter and in accordance with the need for further inspection, Plaintiffs, at their own expense, hired the engineering firm HICAPS to provide a neutral and unbiased investigation of the loss. *Id.* HICAPS concluded "[t]he storm drainage system did not drain properly during the rain event because of obstructions in the storm drain system." *Id.*

On April 20, 2021, Plaintiffs prepared a Sworn Statement in Proof of Loss valuing the claim at $325,971.87. *Id.* In response, Defendants reopened the claim and submitted the Sworn Proof of Loss and supporting documentation to EFI Global. EFI Global issued a supplemental report that concluded as follows: "EFI confirms our original cause of the water intrusion into Building 6903 of the Riverwalk Apartments was a result of the inundation and subsequent backup of the storm sewer network system. The sediment, debris, and/or trash within the storm drain piping as well as the debris reportedly on top of the drain inlet DI-A20 coupled with the relatively high precipitation rate (4.75-inches/hour) both likely contributed to the inundation of the storm sewer network system." *Id.* Defendants again denied the claim and reiterated their position that there was no coverage because the damages were caused, at least in part, by "flooding." *Id.*

Plaintiffs filed their Complaint on July 7, 2021 alleging: (1) breach of contract; (2) breach of good-faith and fair dealing; and (3) unfair and deceptive trade practices under North Carolina law. Doc. 21. On September 30, 2021, Plaintiffs filed a Motion for Partial Judgment on the Pleadings. Doc. 18. Plaintiffs argue that they are entitled to judgment on the pleadings as to their breach of contract claim. They allege the water damage is covered under the policy because it was caused by the backup or overflow from sewers or drains. Doc. 19.

Defendants filed a Motion for Judgment on the Pleadings on October 15, 2021. Doc 21. They argue that they are entitled to judgment on the pleadings on all claims because Plaintiffs' damage: (1) "results from sewer or sump overflow resulting from 'Flood,'" or (2) results from "runoff of surface waters from any source," or (3) resulted in damage to the "interior of any 'building' or structure caused by or resulting from rain[,]" each of which is expressly excluded from coverage. Defendants claim that any one of those provisions excludes coverage even if it is not the sole cause of Plaintiffs' damages so long as it "contributes concurrently or in any sequence to the loss or damage" as provided in the anti-concurrent causation clause language. *Id.* Further, Defendants argue they are entitled to judgment as a matter of law as to Plaintiffs' bad faith and unfair and deceptive trade practices claims due to lack of coverage, non-recognition of the claim, lack of aggravating factors, and because they properly investigated the claim and reasonably relied on the policy language. *Id.*

## DISCUSSION

**A. Standard of Review**

Pursuant to Rule 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In evaluating a motion for judgment on the pleadings, the trial court may consider the pleadings and any materials

3

referenced in or attached to the pleadings which are incorporated by reference. *See* Fed. R. Civ. P. 10(c); *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991). The trial court may also consider documents attached to a motion for judgment on the pleadings so long as those documents are "integral to the complaint" and authentic. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *see Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 145 (4th Cir. 2018).

Such a motion is decided using the same standard that applies to a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted. *Deutsche Bank Nat'l Trust Co. v. I.R.S.*, 361 Fed. App'x 527, 529 (4th Cir. 2010); *Walker v. Kelly*, 589 F.3d 127, 138 (4th Cir. 2009). In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In *Iqbal*, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. *Id.* "Threadbare recitals

4

of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark [] a notable and generous departure from the hyper technical, code pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79.

Second, to the extent there are well pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "Where the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but it has not 'show[n]'- 'that the pleader is entitled to relief,'" and therefore should be dismissed. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Sons of Confederate Veterans v. City of Lexington*, 722 F.3d 224, 228 (4th Cir. 2013) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). Indeed, where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed." *Neitzke v. Williams*, 490 U.S. at 328; *see also Stratton v. Mecklenburg Cnty. Dept. of Soc. Servs.*, 521 Fed. Appx. 278, 293 (4th Cir. 2013). The court must not "accept as true a legal conclusion couched as a factual allegation." *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014).

5

**B. Breach of Contract**

Under North Carolina law, "insurance policies are construed strictly against insurance companies in favor of the insured." *Builders Mutual Insurance Company v. Glascarr Properties, Inc.*, 202 N.C. App. 323, 326 (2010). Further, all clauses of an insurance policy are to be read together with effect given to each word. *Harleysville Mutual Insurance Company v. Buzz Off Insect Shield, L.L.C.*, 346 N.C. 1, 9 (N.C. 2010) (citing *Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348 (N.C. 1970). When the policy defines a term, that definition must be applied to the term wherever it appears in the policy unless the context clearly requires otherwise. *Wachovia Bank*, 276 N.C. at 354.

North Carolina is a concurrent causation state. A loss will generally be covered if the damage results from more than one cause of loss, even if one of the causes is specifically excluded under the terms of the policy. *Avis v. Hartford Fire Ins. Co.*, 195 S.E.2d 545, 549 (N.C. 1973). To overcome this presumption, insurance companies may include an anti-concurrent cause provision. Such a provision provides that a loss caused by a combination of covered and excluded causes will not be covered. *Builders Mutual*, 202 N.C. App. at 326. An anti-concurrent cause clause contained in an insurance policy can preclude coverage regardless of whether the loss arises from more than one cause or sequence of events. *Id.*

The *Ideaitalia* court was presented with a similar issue as the one here. Plaintiffs brought a breach of contract claim against the insurer for denying coverage based upon a flood exclusion and anti-concurrent causation language. *See Ideaitalia Contemp. Furniture Corp. v. Selective Ins. Co. of Am.*, 2016 WL 7238818 (W.D.N.C. Dec. 14, 2016). The *Ideaitalia* defendants based their denial of coverage on that language and filed a motion for summary judgment on the grounds that "the plain language of the Policy does not provide coverage for flood or surface water claims, and

that the surface water that occurred at the Property is clearly excluded, regardless of other concurrent causes." *Id.* at *3. Plaintiffs unsuccessfully attempted to distinguish between the effects of surface water versus the effects of sub-surface water in arguing for coverage. *Id.* at *4. The *Ideaitalia* court held "the plain language of the Policy excludes flood or surface water damage, even if another covered peril . . . concurrently contributes to the damage." *Id.* at *5.

In *Builders Mutual*, an insured property was damaged after vandals broke in and left water taps running, causing extensive damage including mold. 202 N.C. App. at 324. Vandalism was covered under the policy, but mold was excluded in the policy's anti-concurrent causation clause. *Id.* at 325–26. The court held that "the policy unequivocally exclude[d] payment for losses 'caused directly or indirectly by' mold," and the exclusion applied "regardless of any other cause or event that contribute[d] concurrently or in any sequence to the 'loss.'" *Id.* at 326. Even though the mold was a result of the vandalism, "the policy clearly exclude[d] payment of a claim for the cost of mold remediation." *Id.*

"Flood" is defined in the policy as: "A general and temporary condition of partial or complete inundation of normally dry land areas from: (1) *The unusual and rapid accumulation or runoff of surface waters from any source*; (2) The overflow of inland or tidal waters; or (3) Waves, tides or tidal waves." Doc. 1-2, Ex. B (emphasis added). The policy also contains anti-concurrent causation language that precludes flood coverage regardless of the flood's sequence to the loss or damage. Using either party's interpretation of the definition, a flood occurred here to some extent. Even if the rain event itself was not extraordinary (i.e., it was not a hurricane or flash flood), the water that caused the damage accumulated in an unusual amount. Like *Ideaitalia*, the "the plain language of the Policy excludes flood or surface water damage" regardless of the sequence of when that flooding occurred. This case is also similar to *Builders Mutual* because a covered event

7

(here, the backup or overflow from sewer or drains) led to an uncovered event (flooding) damaging the building. Even though the flooding was a result of the backup, coverage would still be excluded based upon the anti-concurrent causation language barring recovery for floods.

Plaintiffs argue that Defendants' reliance on *Ideaitalia* and *Builders Mutual* is misplaced because the damages did not arise in any part from a "Flood" as defined by the policy and the anti-concurrent causation language is limited to damages resulting from "Flood." Doc. 25. Plaintiffs offer a conclusory assertion that there was no flood in the first place, without acknowledging the water that overflowed into the apartment building could have been the result of "the unusual and rapid accumulation or runoff of surface waters from any source."

Additionally, the policy explicitly "does not insure loss or damage to: The interior of any "building" or structure caused by or resulting from rain . . . ." Doc. 1-2, Ex. B. This section of the policy does not include the same anti-concurrent causation language as the flood exclusion, but still applies because the losses alleged by Plaintiffs were inside the building and occurred as the result of a rainstorm. This provision also bars coverage.

**C. Bad Faith and Unfair Trade and Settlement Practices**

"Under North Carolina law, every contract contains 'an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement.'" *Cordaro v. Harrington Bank, FSB*, 260 N.C. App. 26, 38 (2018). "To state a valid claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must plead that the party charged took action 'which injure[d] the right of the other to receive the benefits of the agreement,' thus 'depriv[ing] the other of the fruits of [the] bargain.'" *McDonald v. Bank of N.Y. Mellon Trust Co.*, 259 N.C. App. 582, 587 (2018). In North Carolina, "[b]ad faith means not based on a legitimate, honest disagreement as to the validity of the claim." *Blis Day*

8

*Spa, LLC v. Hartford Ins. Grp.*, 427 F. Supp. 2d 621, 631 (W.D.N.C. 2006). When an insurer denies a claim because of a legitimate, "honest disagreement" as to the validity of the claim, the insurer is entitled to judgment as a matter of law because the plaintiff cannot establish bad faith or any tortious conduct on the part of the insurer. *Olive v. Great American Ins. Co.*, 76 N.C. App. 180, (N.C. App. 1985); *see also, Michael Borovsky Goldsmith LLC v. Jewelers Mutual Ins. Co.*, F. Supp. 3d 306, 314 (W.D.N.C. 2019) (stating that legitimate and honest disagreement over the scope of coverage under an insurance policy does not amount to bad faith).

To establish a claim under North Carolina's Unfair and Deceptive Trade Practices Act, a plaintiff must show: (1) an unfair or deceptive act or practice, (2) in or affecting commerce; (3) which proximately caused injury to plaintiff. *Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 68 (2000). To establish a claim for unfair settlement practices, the plaintiff must also show: "(1) a refusal to pay after recognition of a valid claim; (2) bad faith; and (3) aggravating or outrageous conduct." *Lovell v. Nationwide Mut. Ins. Co.*, 108 N.C. App. 416, 420 (N.C. App. 1993). "It is well recognized that actions for unfair or deceptive trade practices are distinct from actions for breach of contract, and that a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C. Gen. Stat. § 75–1.1." *Birtha v. Stonemore*, N.C., LLC, 220 N.C. App. 286, 298 (2012).

For a breach of contract to rise to the level of a valid UDTPA claim, there must also be "substantial aggravating circumstances," *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 62 (1992), such as "fraud, malice, gross negligence, insult, rudeness, oppression, or wanton and reckless disregard of plaintiff's rights." *Lovell*, 108 N.C. App. at 422. "The determination of whether an act or practice is an unfair or deceptive practice that violates [N.C.

9

Gen. Stat.] § 75-1.1 is a question of law for the court." *Essentia Ins. Co. v. Stephens*, 530 F. Supp. 3d 582, 605 (E.D.N.C. 2021) (citing *Gray*, 352 N.C. at 68).

Here defendants denied the claim based upon a legitimate, honest disagreement about the policy's terms. The parties dispute whether coverage was excluded based upon the "flood" exclusion and the anti-concurrent cause language. Defendants properly investigated the claim and reasonably relied on the policy language to justify their decision that there was no coverage. Further, there were no "substantial aggravating circumstances" present that would elevate this breach of contract claim to the level of a UDTPA claim. Defendants did not act in bad faith in denying the claim, much less act with any level of "fraud, malice, gross negligence, insult, rudeness, oppression, or wanton and reckless disregard of plaintiff's rights." *See Lovell*, 108 N.C. App. at 422.

As Defendants argue, "[t]his claim is merely Plaintiffs' attempt to create a tort action from a contract action and should fail." Doc. 22. *See Birtha*, 220 N.C. App. at 298 ("North Carolina courts are extremely hesitant to allow plaintiffs to attempt to manufacture a tort action and alleged UDTPA out of facts that are properly alleged as breach of contract claim."). For these reasons, Defendants' Motion for Judgment on the Pleadings should be granted and Plaintiffs' Motion for Partial Judgment on the Pleadings be denied.

## RECOMMENDATION

FOR THE FOREGOING REASONS, the undersigned respectfully recommends that Plaintiffs' Motion for Partial Judgment on the Pleadings (Document #18) be denied and Defendants' Motion for Judgment on the Pleadings (Document #21) be granted.

## NOTICE OF APPEAL RIGHTS

The parties are hereby advised that pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the Court constitutes a waiver of the right to de novo review by the District Judge. *Diamond v. Colonial Life*, 416 F.3d 310, 315-16 (4th Cir. 2005); *Wells v. Shriners Hosp.*, 109 F.3d 198, 201 (4th Cir. 1997); *Snyder v. Ridenour*, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. *Thomas v. Arn*, 474 U.S. 140, 147 (1985); *Diamond*, 416 F.3d at 316; *Page v. Lee*, 337 F.3d 411, 416 n.3 (4th Cir. 2003); *Wells*, 109 F.3d at 201; *Wright v. Collins*, 766 F.2d 841, 845-46 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and to the Honorable Kenneth D. Bell.

**SO RECOMMENDED.**

Signed: January 27, 2022

_____
David S. Cayer
United States Magistrate Judge