# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:21-CV-00110-KDB-DSC

| | |
|---|---|
| SUMMIT MANAGEMENT SERVICES, INC, AND RIVERWALK DENVER II, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> FALLS LAKE FIRE & CASUALTY COMPANY AND COLONY INSURANCE COMPANY, <br><br> Defendants. | <u>ORDER</u> |

**THIS MATTER** is before the Court on the Parties' cross motions for judgment on the pleadings (Doc. Nos. 18, 21), the Memorandum and Recommendation of the Honorable Magistrate Judge David S. Cayer ("M&R") entered January 27, 2022, (Doc. No. 31), and Plaintiffs' Objection to the M&R (Doc. No. 32). The Court has carefully considered these motions, the parties' briefs and the full record in this action. For the reasons discussed below, the Court concludes after its *de novo* review that whether the Plaintiffs' commercial insurance policy with the Defendants provides coverage for the water damage in Plaintiffs' apartment complex cannot be determined as a matter of law based on the parties' pleadings. Therefore, the Court will respectfully decline to follow the M&R's recommendation and deny both of the Parties' motions as to Plaintiff's claim for breach of contract. However, the Court will adopt the M&R's recommendation to grant the Defendant's motion as to Plaintiff's "bad faith" and statutory unfair trade practices claims (to which Plaintiffs have raised no objection) because the allegations do

1

not support expanding this action beyond a contractual insurance coverage dispute. In sum, Plaintiff's contract claim will be allowed to proceed towards a decision on the merits following discovery (in the absence of an earlier resolution of the matter between the parties).

## I. LEGAL STANDARD

A district court may designate a magistrate judge to "submit to a judge of the court proposed findings of fact and recommendations for the disposition" of certain pretrial matters, including motions to dismiss. 28 U.S.C. § 636(b)(1). Any party may object to the magistrate judge's proposed findings and recommendations, and the court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Objections to the magistrate's proposed findings and recommendations must be made "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *United States v. Midgette,* 478 F.3d 616, 622 (4th Cir.), *cert. denied*, 551 U.S. 1157 (2007). However, the Court does not perform a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). After reviewing the record, the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Parties each move for a judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." *See In re Bland Companies, Inc. Fair Lab. Standards Act & Wage & Hour Litig.*, 517 F. Supp. 3d 484, 492–93 (W.D.N.C. 2021), quoting *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th

2

Case 5:21-cv-00110-KDB-DSC   Document 34   Filed 03/11/22   Page 2 of 14

Cir. 2002). A motion for judgment on the pleadings is governed by the standard applicable to a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Conner,* 2022 WL 53977 at *1; *Butler v. United States*, 702 F.3d 749, 751–52 (4th Cir. 2012); *Shipp v. Goldade*, No. 5:19-CV-00085-KDB-DCK, 2020 WL 1429248, at *1 (W.D.N.C. Mar. 19, 2020).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The court, however, accepts all well-pled facts as true and draws all reasonable inferences in Plaintiff's favor. *See Conner v. Cleveland Cty., N. Carolina, No. 19-2012, 2022 WL 53977, at *1 (4th Cir. Jan. 5, 2022); E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). In so doing, the Court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Pa. Nat'l Mut. Cas. Ins. Co. v. Beach Mart, Inc.*, 932 F.3d 268, 274 (4th Cir. 2019). Construing the facts in this manner, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Pledger v. Lynch*, 5 F.4th 511, 520 (4th Cir. 2021) (quoting *Ashcroft*, 556 U.S. at 678). Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

Also, in analyzing a Rule 12 motion, a court may consider "documents incorporated into the complaint by reference and matters of which a court may take judicial notice." *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L.Ed.2d 179 (2007). In particular, when considering a Rule 12(c) motion, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint ... so long as the authenticity of these documents is not disputed." *Chapman v. Asbury Auto. Grp., Inc.*, No. 3:13 cv 679, 2016 WL 4706931, at *1, 2016 U.S. Dist. LEXIS 121043, at *3 (E.D. Va. Sept. 7, 2016) (quoting *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396-97 (4th Cir. 2006)); *see also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159 (4th Cir. 2016). So, here, the Court will consider the insurance policy at issue along with the other documents attached to the pleadings.

## II.     FACTS AND PROCEDURAL HISTORY

Plaintiffs Summit Management Services, Inc. and Riverwalk Denver II, LLC ("Summit") own and operate the Riverwalk Apartment Complex located in Denver, North Carolina. Doc. No. 1 at ¶3. Defendants Falls Lake Fire & Casualty Company and Colony Insurance Company ("Falls Lake Insurance") provided Summit with a property insurance policy that insured the complex from March 31, 2020 until March 31, 2021 (the "Policy"). *See* Doc. No. 1-2, Ex. B. The dispute in this case concerns whether the Policy covers over $300,000 in alleged damage to eight ground-level apartment units that was "sustained damage due to water entering the building during a minor rain event." Doc. No. 1 at ¶11.

The pleadings reflect that the Parties agree in part and disagree in part on the cause of the water damage. Expert engineering firms hired by each side determined that backup or overflow from sewers or drains caused an overflow of stormwater, which entered the eight units and

4

caused substantial damage. *See id.* at ¶¶ 13, 21, 26-27, 33. However, the engineering firms disagree on whether the amount and/or rate of rain was a contributing cause of the water damage. *See id.* at ¶¶ 28, 33. ("the amount of rain observed … 'is not sufficient to cause a flood as claimed by [Defendants].'"; "[The storm drain blockage] coupled with the relatively high precipitation rate (i.e. 4.75-inches/hour) both likely contributed to the inundation of the storm sewer network system.").

Summit filed a claim under the Policy stating that the damage was caused by "Back Up or Overflow of Sewer or Drains," which is a specific risk covered by the Policy. *Id.* at ¶16 ("Coverage is extended for loss or damage that results from back up or overflow of sewers or sump pump wells or similar devices designed to prevent overflow seepage or leakage of subsurface water that occurs during the policy period."). Defendants denied the claim based upon the Policy's exclusion of coverage for "floods," *id.* at ¶ 34. "Flood" is defined in the Policy, in relevant part, as "[a] general and temporary condition of partial or complete inundation of normally dry land areas from: (1) The unusual and rapid accumulation or runoff of surface waters from any source … ." and is specifically referenced as an exclusion in the grant of coverage for sewer or drain backups. ("However, no coverage is extended for loss or damage that results from sewer or sump overflow resulting from 'Flood.'"). According to Defendants, this exclusion would also apply even if the damage was also caused by the blocked storm drain based on the Policy's "anti-concurrent cause" language, which the Parties agree excludes coverage for damages caused in part by both covered and excluded risks.

Further, Defendants denied coverage based on the Policy's exclusion for "loss or damage to: The interior of any "building" or structure caused by or resulting from rain … ." However, as to this exclusion, the Policy does not contain "anti-concurrent cause" language. Therefore, if a

5

covered cause joined with damage "resulting from rain" it might still be covered under the Policy.

Plaintiffs filed their Complaint on July 7, 2021 alleging: (1) breach of contract; (2) breach of the covenant of good-faith and fair dealing; and (3) unfair and deceptive trade practices, all under North Carolina law. *See* Doc. No. 1. Plaintiffs have filed a Motion for Partial Judgment on the Pleadings, seeking judgment in their favor on their breach of contract claim. Doc. No. 18. Subsequently, Defendants filed a cross Motion for Judgment on the Pleadings, Doc. No. 21, arguing that they are entitled to judgment on the pleadings on all claims.

The M&R recommends that the Court grant Defendants' motion and deny Plaintiffs' motion, concluding that the Policy's flood exclusion, considered together with the anti-concurrent cause provision, as well as the exclusion for interior building damage "resulting from rain" bars coverage for Summit's loss. Further, the M&R finds that Summit's claims for bad faith and unfair trade practices should be dismissed on the grounds that Defendants had at least a "legitimate, honest disagreement about the policy's terms" and that there are no "substantial aggravating circumstances" alleged that could elevate Plaintiff's breach of contract claim into an unfair trade practice. *See* Doc. No. 31 at 8-10.

### III. DISCUSSION

In their cross motions for judgment on the pleadings each side asks that the Court interpret the Policy as a matter of law to either cover or exclude coverage for the damage to Summit's apartments. "An insurance policy is a contract and its provisions govern the rights and duties of the parties thereto." *C. D. Spangler Constr. Co. v. Indus. Crankshaft & Eng'g Co.*, 326

6

N.C. 133, 142 (1990). Where the relevant facts are not disputed,[1] construing the policy is an issue of law. *See Parker v. State Cap. Life Ins. Co.*, 259 N.C. 115, 117, 130 S.E.2d 36, 38 (1963); *Trophy Tracks, Inc. v. Mass. Bay Ins. Co.*, 195 N.C. App. 734, 739, 673 S.E.2d 787, 790 (2009). Courts apply general contract interpretation rules when interpreting an insurance policy. *Accardi v. Hartford Underwriters Ins. Co.*, 373 N.C. 292, 295 (2020). For example, as in other contracts, the objective of construction of terms in an insurance policy is to arrive at the insurance coverage intended by the parties when the policy was issued. *Wachovia Bank & Tr. Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 354 (1970). Also, the various terms of the policy "are to be harmoniously construed, and if possible, every word and every provision is to be given effect." *Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 506 (1978); *see also Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 364 N.C. 1, 9 (2010) ("We construe all clauses of an insurance policy together, if possible, so as to bring them into harmony." (citation and internal quotation marks omitted)). If the policy contains a defined term, "the court applies that meaning unless the context requires otherwise." *Wachovia Bank*, 276 N.C. at 354.

However, there are also specific rules of interpretation for insurance policies under North Carolina law. Significantly, "wherever possible, the policy will be interpreted in a manner which gives, but never takes away coverage." *Wash. Hous. Auth. v. N.C. Hous. Auths. Risk Retention Pool*, 130 N.C. App. 279, 281 (1998) (citation and internal quotation marks omitted). In construing the coverage afforded by the applicable policy, "provisions of insurance policies and compulsory insurance statutes which extend coverage must be construed liberally so as to provide coverage, whenever possible by reasonable construction." *State Capital Ins. Co. v.*

---

[1] As discussed below, the relevant fact here – whether or not the rain event was "unusual" within the meaning of the definition of a "flood" in the Policy – is squarely disputed and precludes a ruling on behalf of either party as a matter of law.

7

*Nationwide Mut. Ins. Co.*, 318 N.C. 534, 538 (1986), (citing *Moore v. Hartford Fire Ins. Co.*, 270 N.C. 532 (1967)).

To give effect to these principles, "any ambiguity or uncertainty as to the words used in the policy should be construed against the insurance company and in favor of the policyholder or beneficiary. *Id.* As very recently noted by one of our sister district courts in North Carolina, the Supreme Court of North Carolina once explained: "[w]hen an insurance company, in drafting its policy of insurance, uses a 'slippery' word to mark out and designate those who are insured by the policy, it is not the function of the court to sprinkle sand upon the ice by strict construction of the term. All who may, by any reasonable construction of the word, be included within the coverage afforded by the policy should be given its protection. If, in the application of this principle of construction, the limits of coverage slide across the slippery area and the company falls into a coverage somewhat more extensive than it contemplated, the fault lies in its own selection of the words by which it chose to be bound." *Owners Ins. Co. v. MM Shivah LLC, et al.*, No. 5:20-CV-21-D, 2022 WL 668382, at *3 (E.D.N.C. Mar. 4, 2022) (quoting *Grant v. Emmco Ins. Co.*, 295 N.C. 39, 43, 243 S.E.2d 894, 897 (1978)). However, if a court finds that no ambiguity exists, the court must construe the document according to its terms, giving undefined "nontechnical words ... their meaning in ordinary speech, unless the context clearly indicates another meaning was intended." *Woods*, 295 N.C. at 506.

The scope of coverage should also not be interpreted to give no effect to additional risks specifically included in the policy. *See Fulford v. Jenkins*, 195 N.C. App. 402, 407 (2009) (interpreting insurance contract to give effect to additional coverage purchased where interpretation of coverage would violate rules of contract interpretation by giving no effect to the additional coverage); *Pulte Home Corp. v. Am. S. Ins. Co.*, 185 N.C. App. 162, 167–68 (2007)

8

(resisting a "cramped reading" of coverage that would result in coverage in only an extremely narrow set of circumstances and would provide "no genuine insurance" as irreconcilable with North Carolina's "policy of construing ambiguous insurance policies in favor of the insured and in a manner that provides coverage").

The insured bears the burden to prove coverage. *See Nationwide Mut. Ins. Co. v. McAbee*, 268 N.C. 326, 328 (1966); *N.C. Farm Bureau Mut. Ins. Co. v. Sadler*, 365 N.C. 178, 182, (2011). However, "[i]f the insurer relies on a clause of the policy which excludes coverage, the burden is on the insurer to establish the exclusion." *McAbee*, 268 N.C. at 328, 150 S.E.2d at 497. Moreover, exclusions are not favored, and courts strictly construe exclusions against the insurer within the reasonable interpretation of the policy language. *See Eatman Leasing, Inc. v. Empire Fire & Marine Ins. Co*., 145 N.C. App. 278, 281 (2001). "When construing the exclusion provision of a [an insurance] policy [the court is] guided by the rule that provisions which exclude liability of insurance companies are not favored and therefore all ambiguous provisions will be construed against the insurer and in favor of the insured." *State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 318 N.C. 534, 538 (1986) (citing *Wachovia Bank,* 276 N.C. at 354); *see Owners Ins*., 2022 WL 668382, at *4.

Finally, in interpreting the Policy, the Court must take into account that North Carolina is a concurrent causation state. A loss will generally be covered if the damage results from more than one cause of loss, even if one of the causes is specifically excluded under the terms of the policy. *Avis v. Hartford Fire Ins. Co.*, 195 S.E.2d 545, 549 (N.C. 1973). To overcome this presumption, insurance companies may include an anti-concurrent cause provision. Such a provision provides that a loss caused by a combination of covered and excluded causes will not be covered. *Builders Mutual Insurance Company v. Glascarr Properties, Inc.*, 202 N.C. App. 323, 326

9

(2010). An anti-concurrent cause clause contained in an insurance policy can preclude coverage regardless of whether the loss arises from more than one cause or sequence of events. *Id.*

The Parties generally agree on the contours of the questions before the Court related to Plaintiff's claim for breach of contract, which are 1) does the Policy's "flood" exclusion apply to Plaintiff's claim for coverage? and 2) does the Policy's exclusion of coverage for damage to the interior of any building or structure resulting from rain bar coverage, even though a covered risk (a clogged storm drain) is an admitted cause of the damage?

**A. The Flood Exclusion**

In the absence of an applicable exclusion from coverage, the Policy provides coverage for covered loss or damage "that results from back up or overflow of sewers or sump pump wells or similar devices." There appears to be no dispute that at least one of the causes of the damage alleged by the Plaintiff was the backup of stormwater from a blocked storm drain or sewer. Similarly, Plaintiff does not dispute that "if the underlying rain event at issue in this case constituted a '[f]lood,' as that term is defined by the Policy, coverage would be excluded pursuant to the Policy's anti-concurrent causation clause language in [the section related to sewers or drains]." Doc. No. 32 at 5. Therefore, the critical issue in determining whether the Policy's "Back Up or Overflow of Sewer or Drains," coverage applies to Plaintiff's losses is whether there was a "flood" at the apartment complex.

In the Policy, "Flood" is defined as the "… partial or complete inundation of normally dry land areas from: (1) The unusual and rapid accumulation or runoff of surface waters from any source … ." The pleadings reflect that the damaged apartment buildings were "normally dry land" that were at least partially inundated with water. Therefore, whether or not a "flood" occurred depends on whether there was an "unusual and rapid" accumulation of water –

10

language that is not further defined in the Policy and for which Parties' interpretations sharply diverge.

Plaintiff contends that "unusual" in this context should be determined based on whether the amount and/or rate of the rain event was "unusual"; that is, whether the rain event was, as they have alleged, merely a "seasonal rainfall" or was a rarer event that might be considered truly "unusual." However, according to Defendant, the Court should interpret "unusual" only with respect to the incursion of water into the building, arguing that "it is unusual for water to flow into a residential building [therefore] … [t]he accumulation of rain in those areas is a "flood" regardless of the amount of rain or its duration." Doc. No. 33 at 3. Fairly applying the well-established principles that ambiguities in insurance policies should be resolved in favor of the insured and exclusions from coverage should be strictly construed, the Court finds that the Policy term "unusual" should be interpreted with respect to the nature of the event leading to the accumulation of water rather than simply the fact that water would not be normally found in a particular area.[2]

As noted above, the Court must, where possible, give effect to all of the language of the policy. In defining a "flood" the Policy requires that the water inundate "normally dry" land. Thus, Defendants argued reading of the term "unusual" (i.e., it is "unusual" for water to flow in an apartment) appears to already be encompassed in the requirement that the land be *normally dry*.[3] Therefore, the Court finds that the Policy's requirement that the water accumulation be

---

[2] To be clear, the Court does not hold that any water damage suffered by the insured would be covered if the precipitating event is not "unusual." Rather, at issue is only the exclusion of coverage otherwise provided by the Policy. Thus, the insured must first establish that loss or damage is covered by the Policy. If so, then the flood exclusion only applies to "unusual" events.
[3] Indeed, the Court finds persuasive Plaintiff's argument that if the flood exclusion was interpreted to bar coverage for any sewer or drain backup that led to water damage where water

11

"unusual" must mean something more than just that it is "unusual" for water to be in the damaged area. Whether or not an accumulation of water was "unusual" thus depends on the nature of the event that led to the surface water, here the "rain event" on August 13, 2020.

However, the Court's interpretation of the definition of a "flood" does not mean that the question of coverage must be answered in favor of Plaintiff. Rather, the Parties have, based on differing expert opinions, presented, at least at this early stage of the case, a disputed factual issue on whether the rain event, in its amount / rate of rain, was "unusual" in accordance with the plain and ordinary meaning of that word. Therefore, neither party is entitled to judgment on the pleadings as a matter of law on the Policy's flood exclusion.

**B. The Exclusion for Interior Building Damage Resulting from Rain**

Similarly, the Court finds in favor of the Plaintiff on the Policy provision that states that the policy "does not insure loss or damage to: The interior of any "building" or structure caused by or resulting from rain . . . ." *See* Doc. 1-2, Ex. B. While Plaintiff indisputably seeks to recover for loss or damage to the interior of several apartments caused by or resulting from rain (at least in part), this section of the Policy, as noted in the M&R, does not include the same anti-concurrent causation language as the flood exclusion. As discussed above, Plaintiff has sufficiently alleged that its water damages were "caused" by a backup in the drains / sewers, a cause for which the Policy separately and expressly grants coverage. Therefore, even though Plaintiff cannot recover based on damages "caused by or resulting from rain," it may potentially be entitled to coverage under the covered concurrent cause of a blocked drain or

---

does not typically accumulate then it is unlikely that the specific provision of coverage for such backups – for which Plaintiff paid a premium – would ever cover any damages. In turn, Defendant has not identified any circumstance where coverage would be afforded under its interpretation. A reading of the Policy that makes a grant of coverage illusory is not permitted. *See Fulford v. Jenkins*, 195 N.C. App. at 407.

sewer. The Court will accordingly deny Defendant's motion on the basis of a lack of coverage for interior building damage caused by or resulting from rain.

### C. Plaintiff's "Bad Faith" and Unfair Trade Practices Claims

In addition to its breach of contract claim for coverage under the Policy, Plaintiff asserts claims for breach of the "covenant of good faith and fair dealing" and claims for violation of North Carolina statutes related to "unfair claims settlement practices" and unfair and deceptive trade practices. The M&R recommends granting Defendants' motion as to these claims, and Plaintiffs have not raised any specific objection to the M&R's recommendation. "In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation" and need not give any further explanation for adopting the M&R. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005); *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

Having carefully reviewed the M&R, the relevant portions of the record and applicable legal authority, this Court is well satisfied that there is no clear error in the M&R's recommendation that Defendant is entitled to judgment on the pleadings on Plaintiff's "bad faith" and unfair practices claims. *Diamond,* 416 F.3d at 315. As stated in the M&R, "North Carolina courts are extremely hesitant to allow plaintiffs to attempt to manufacture a tort action and alleged UDTPA out of facts that are properly alleged as breach of contract claim." *Birtha v. Stonemore*, N.C., LLC, 220 N.C. App. 286, 298 (2012). The parties here are engaged in a contractual dispute about coverage under a written insurance policy, no more and no less. Accordingly, this Court will adopt the findings and recommendations set forth in the M&R as

13

to these claims as its own and Defendant's motion will be granted as to Plaintiff's claims beyond its claim for breach of contract.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendant's Motion for Judgment on the Pleadings (Doc. No. 21) is **GRANTED** as to Plaintiff's second and third claims for relief as discussed above and **DENIED** as to Plaintiff's claim for breach of contract**;**

2. Plaintiff's Motion for Judgment on the Pleadings (Doc. No. 18) is **DENIED**; and

3. This case shall proceed towards a determination on the merits on Plaintiff's remaining claim in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED ADJUDGED AND DECREED**.

Kenneth D. Bell
United States District Judge